UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MATTHEW RICHARDSON,

       Plaintiff,                         Case No. 1:19-cv-711

v.                                          Honorable Janet T. Neff

J. THOMAS,

       Defendant.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

    **I.**    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI) in Ionia, Michigan, where he is serving two life

sentences for two convictions of first-degree murder. Plaintiff sues J. Thomas, a Resident Unit Manager (RUM) at RMI.

Plaintiff alleges that he was housed at the Kinross Correctional Facility (KCF) when a "major disturbance" among prisoners took place in the KCF prison yard on September 10, 2016. (Compl., ECF No. 1, PageID.2.) He transferred to RMI three days later and received a class I misconduct ticket for rioting or striking, based on his alleged involvement in the disturbance. Prison officials placed him in temporary segregation until his misconduct hearing.

Officer Marutiak held a hearing on the misconduct ticket on September 14 and found Plaintiff not guilty because there was no credible evidence to support the assertion that Plaintiff participated in the disturbance at KCF. However, Marutiak charged Plaintiff with a class II misconduct for being out of place. Plaintiff contends that he did not receive adequate notice of this charge prior to the hearing.

Plaintiff transferred to the Oaks Correctional Facility (ECF) on October 5, 2016, where he was again placed in segregation. On October 11, Plaintiff received a notice of intent to conduct an administrative hearing (NOI),[1] written by Defendant Thomas. Plaintiff contends that Thomas deliberately misrepresented facts in the NOI.

On October 13, Hearing Officer Burke allegedly dismissed the NOI because the evidence did not support it. That same day, Defendant Thomas allegedly prepared a second NOI falsely claiming that Plaintiff was involved in the disturbance at KCF because he was not on his bunk at the time. Plaintiff contends that he was deprived of due process because the NOI was not reviewed within 24 hours, in accordance with the prison policy. In any event, Hearing Officer Burke found Plaintiff guilty of the charge in the second NOI.

---

[1] The attachments to Plaintiff's complaint refer to the NOI as a "Notice of Intent to Classify to Segregation." (*See* Request for Rehearing Response, ECF No. 1, PageID.16.)

Plaintiff successfully appealed the guilty finding. On January 25, 2017, a Hearings Administrator allegedly dismissed the second NOI because it was false.

Plaintiff claims that Defendant Thomas intentionally falsified the NOIs to retaliate against Plaintiff and to have him placed in segregation because Thomas believed that Plaintiff was involved in the disturbance at KCF. Plaintiff argues that Thomas' actions violated Plaintiff's rights under the First, Fifth, Eighth, and Fourteenth Amendments.

As relief, Plaintiff seeks an injunction and damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff's allegations encompass actions by multiple prison officials, but RUM Thomas is the only individual named as a defendant to the complaint, and he is liable under § 1983 solely for his own conduct; he is not liable for the conduct of other officials. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Thus, the Court will examine the allegations of the complaint to determine whether Plaintiff states a claim against Defendant Thomas. The Court will not consider whether Plaintiff states a claim against other individuals mentioned in the body of the complaint.

### III. Retaliation

Plaintiff claims that Thomas retaliated against him by writing false NOIs. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of

ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Plaintiff's claim fails because he does not allege that Thomas' actions were motivated by any protected conduct. Instead, he alleges that Thomas' actions were motivated by Thomas' belief that Plaintiff was involved in the prison disturbance at KCF. In the prison context, however, prisoner riots and strikes violate prison rules and, thus, are not protected conduct. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (insolent behavior that violates prison regulations is not protected conduct). Accordingly, Plaintiff has not alleged a necessary element of a retaliation claim.

### IV.     Due Process

Plaintiff also claims that he was deprived of due process because he did not receive adequate notice of charges against him. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The only interest at stake with regard to the allegedly false NOIs was the change in Plaintiff's conditions of confinement due to placement in segregation. However, the Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). A prisoner is entitled to the protections of due process only when a sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Placement in administrative segregation is not an atypical and significant hardship. It "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). In *Sandin*, the Supreme Court concluded that the plaintiff's placement in disciplinary segregation for 30 days did not implicate a liberty interest because it "mirrored those conditions imposed upon inmates in administrative segregation and protective custody" and did not "present a dramatic departure" from his sentence. *Sandin*, 515 U.S. at 485-86. Similarly, in *Rimmer-Bey v. Brown*, 62 F.3d 789 (6th Cir. 1995), the Sixth Circuit concluded that the plaintiff's placement in administrative segregation in a Michigan prison was not an atypical and significant hardship in the context of his life sentence. *Id.* at 791.

Plaintiff alleges no facts about the segregative confinement resulting from the NOIs prepared by Thomas which would suggest that his confinement imposed, or threatened to impose, an atypical and significant hardship. Plaintiff was apparently confined in segregation from the beginning of October 2016 until the end of January 2017, a period of approximately four months. However, the Court of Appeals for the Sixth Circuit has held that confinement in segregation for much longer periods of time does not give rise to a protected liberty interest. *See, e.g.*, *Jones v. Baker*, 155 F.3d 810, 812-23 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Plaintiff has not

6

alleged the sort of "extreme circumstances" that would render his confinement significant and atypical. *Cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

In short, Thomas' actions did not implicate any of Plaintiff's protected property or liberty interests. Consequently, Plaintiff does not state a due process claim.

## V. Eighth Amendment

Plaintiff also does not state an Eighth Amendment claim. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Defendant Thomas allegedly subjected Plaintiff to a risk of further confinement in segregation. However, segregation in itself does not constitute cruel and unusual punishment. To the contrary, placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981). Plaintiff may have been denied certain privileges as a result of his confinement in segregation, but he does not allege that he was denied basic human needs and requirements. Accordingly, he has not alleged an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011) (no Eighth Amendment claim where "[Plaintiff] has not asserted that he was denied any basic human needs while in administrative segregation"); *see also Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) ("'Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim.'") (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)).

## VI.     Equal Protection

Plaintiff also claims that he was denied equal protection. The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared

to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). Plaintiff alleges no disparate treatment here. His conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.

### VII. Fifth Amendment – Double Jeopardy

Plaintiff argues that Thomas subjected him to double jeopardy by claiming that he was involved in the prison disturbance after Plaintiff had already been found not guilty of a misconduct for riot or striking. The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. In order to state a double jeopardy violation, Plaintiff must allege "multiple criminal punishments" for the same offense. *Hudson v. United States*, 522 U.S. 93, 99 (1997).

Here, Plaintiff does not allege multiple punishments for the same offense, let alone multiple *criminal* punishments. Indeed, the Double Jeopardy Clause does not apply here because administrative prison disciplinary sanctions are civil in nature; they are not criminal. "The Double Jeopardy Clause was not intended to inhibit prison discipline." *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008); *see also Odom v. Smith*, No. 1:08-cv-1181, 2009 WL 125286, at *6 (W.D. Mich. Jan. 16, 2009) (finding prisoner failed to state double jeopardy claim based on prison officials' decision to confiscate his property because the taking of prisoner property is administrative in nature and the Double Jeopardy Clause does not apply to administrative proceedings).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: October 10, 2019  /s/ Janet T. Neff
Janet T. Neff
United States District Judge